UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DESHAWN HENDRIX,

   Plaintiff,

Case No. 1:13-cv-389

Hon. Robert J. Jonker

v.

UNKNOWN STREIT, *et al.*,

   Defendants.

_____/

**REPORT AND RECOMMENDATION**

   This is a *pro se* civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is now before the court on a motion for summary judgment filed by defendants Andrew Streit, Reginald Moore and Demetrius Shepherd (docket no. 15).

   **I.**  **Plaintiff's complaint**

   Plaintiff, Deshawn Hendrix, commenced this action by filing a civil rights complaint naming the following defendants who were assigned to the Earnest C. Brooks Correctional Facility (LRF): Corrections Officer (CO) Andrew Streit; CO Demetrius Shepherd; Sergeant Reginald Moore; an unknown medical practitioner; and an unknown registered nurse. Compl. at ¶¶ 4-8 (docket no. 1). Plaintiff has sued each defendant in both their official and individual capacities. *Id.* at ¶ 9.

   Plaintiff's complaint sets forth the following allegations. On June 7, 2010, between 2:30 p.m. and 3:30 p.m., two prisoners "requested" plaintiff's glasses when he left the school building, and then attacked him. *Id.* at ¶¶ 10-12. Plaintiff yelled for help from the corrections officer that was supposed to be securing the alley where the attack occurred. *Id.* at ¶ 13. Plaintiff struggled with one of the prisoners for approximately two minutes, during which he acted to defend himself.

*Id.* at ¶¶ 14-15. Defendants Shepherd, Moore and Streit came to the scene after two minutes. *Id.* at ¶ 16. Defendant Shepherd told plaintiff to get down, plaintiff complied with the order and "was knock[ed] down to his knees." *Id.* at ¶ 17.

Defendants Shepherd, Moore and Streit, told plaintiff to put his arms behind his back, at which time plaintiff told defendants that his arm "was messed up" from an incident involving his right shoulder in 2008. *Id.* at ¶ 18. Defendant Shepherd knew that plaintiff could not get his arms behind his back, and used physical force to grab plaintiff from behind by his legs and foot and "culled [p]laintiff" causing his foot and knees to be injured. *Id.* at ¶¶ 19-20. Plaintiff informed defendant Shepherd that he could not put both of his arms behind his back. *Id.* at ¶ 21. However, defendant Shepherd continued to drag and pull plaintiff unnecessarily as plaintiff was yelling at Shepherd "you're hurting me." *Id.* at ¶ 22. Defendant Shepherd told plaintiff "to shut-up and put your damn hands behind your back motherfucker." *Id.* at ¶ 23. While defendants Shepherd, Moore and Streit had plaintiff on the ground, other corrections officers led plaintiff's attacker to him. *Id.* at ¶¶ 24-25. Plaintiff's attacker kicked plaintiff in the face resulting in bleeding from his nose and mouth. *Id.* at ¶ 26.

Sometime before June 7, 2010 altercation, plaintiff informed defendants Streit and Moore "on many occasions" that there needed to be someone on duty at all times at the back entry of the school building alley when prisoners are being let out of class. *Id.* at ¶ 27. The defendants, however, informed plaintiff not to worry about their jobs because he was a prisoner and not their boss. *Id.* at ¶ 28.

At some point after the incident, plaintiff told non-party Officer Brandt and an unknown officer that he needed to go to health services for his injuries. *Id.* at ¶ 29. Plaintiff

2

informed defendant unknown nurse that he was assaulted by two prisoners and "that his knees, hand, arm, mouth and nose were bleeding." *Id.* at ¶¶ 30-31.

Plaintiff also alleged that he informed an "unknown nurse" that his "left foot (toes)" were injured when he was assaulted by two prisoners. *Id.* at ¶ 30. The unknown nurse gave plaintiff pain reliever from June 7, 2010 through August 2010. *Id.* at ¶ 33. Plaintiff believes that his discolored "foot (toe)" is infected and claims that his movement has been limited due to the injuries cause by defendants. *Id.* at ¶ 34. Finally, plaintiff alleged that he has only "limited access" to insulin to treat his diabetes and that defendant Unknown Doctor refused to treat the injury "of his foot (toe)" and refused to recommend plaintiff "for a second opinion of advice by a[n] expert." *Id.* at ¶¶ 35-36.

Plaintiff has alleged four "Legal Claims." In Claim I, plaintiff alleged that defendants Shepherd, Moore and Streit used excessive force by physically dragging and forcefully pulling plaintiff by his legs and foot. *Id.* at ¶ 39. Plaintiff alleged that he was not breaking any prison rule or acting disruptively, and that the actions of these three defendants violated his rights under the Eighth Amendment. *Id.* In Claim II, plaintiff repeated his Eighth Amendment claim against defendants Shepherd, Moore and Streit. *Id.* at ¶ 40. In Claim III, plaintiff alleged that defendants Shepherd, Moore and Streit failed to protect him after plaintiff informed these defendants "on many occasions" that there needed to be someone on duty at the back entry to school building. *Id.* at ¶ 41. Defendants' actions in failing to protect plaintiff violated his rights under the Eighth Amendment. *Id.* Finally, in Claim IV, plaintiff alleged that defendant unknown medical practitioner was deliberately indifferent to plaintiff's medical needs in violation of the Eighth Amendment when the doctor delayed having plaintiff's foot x-rayed. *Id.* at ¶ 42. Plaintiff did not include a claim against

defendant unknown registered nurse. For his relief, plaintiff seeks damages against defendants in excess of $2,400,000.00. *Id.* (docket no. 1 at pp. 9-10).

### II.     Defendants' motion for summary judgment

### A.     Legal standard

Defendants seek summary judgment on plaintiff's Claims I, II and III. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by":

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### B. Excessive Force

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 3 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Plaintiff alleged that defendants Streit, Moore and Shepherd used excessive force against him. The Supreme Court has held that "the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). In analyzing plaintiff's claims, the court must examine whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. *Hudson*, 503 U.S. at 6. Courts evaluate the injury suffered, "the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Id*. at 7, quoting *Whitley*, 475 U.S. at 321.

Courts must give deference to actions prison guards take to maintain prison discipline, as long as those actions are taken pursuant to a considered choice and not in bad faith or for no legitimate purpose. *Whitley*, 475 U.S. at 321-22. "[Not every] malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9. Where the use of some force is required to restore order, it does not violate the Eighth Amendment unless the force used is "repugnant to the conscience of mankind" or the force is used "maliciously and sadistically for the very purpose of causing harm." *Id.* at 9,10 (citations omitted). While an Eighth Amendment claim need not include a "significant injury," a *de minimis* use of physical force will not support such a claim unless the force used is "of a sort repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9-10.

There is no dispute that on June 7, 2010, plaintiff was engaged in an altercation with inmate Butler which Butler initiated. In his affidavit, CO Streit stated that at about 3:25 p.m. on June 7, 2010, he saw Butler "throw a punch at [p]laintiff." Streit Aff. at ¶¶ 4-5 (docket no. 16-2). Streit called for additional staff over the radio. *Id.* at ¶ 5. Streit reached the inmates in less than a minute, at which time plaintiff "had gained control of the fight by striking Inmate Butler while he knelt on the ground." *Id.* at ¶ 6. In his counter-affidavit, plaintiff stated that he was attacked by two other inmates and struggled with one of the inmates (presumably Butler) for about two minutes as he "protected himself from the beating." Hendrix Aff. at ¶¶ 3-4 (docket no. 18-2). Inmate Butler was found guilty of fighting in a related major misconduct, in which he was determined as the aggressor. *See* Major Misconduct Hearing Report (docket no. 18-3 at p. 1). The hearing officer found that while the two inmates were being separated by defendants, Butler managed to kick plaintiff in the

face.  *Id.*  In a separate major misconduct hearing, Hendrix was found not guilty of fighting, because he acted in self-defense.  *See* Major Misconduct Hearing Report (docket no. 18-1 at p. 6).

Plaintiff's excessive force claim arises from the manner in which defendants restrained him.  CO Streit stated that he and the other defendants gave plaintiff verbal orders to place his hands behind his back, but that plaintiff refused to comply with the orders by tightening his arms, clenching his fists and pressing his fists against the walkway.  Streit Aff. at ¶ 7.  Streit further stated that they used the amount of force necessary to physically restrain plaintiff and place plaintiff's hands behind his back.  *Id.*  Once defendants had plaintiff restrained, they waited to pick him up off of the ground until inmate Butler was escorted away.  *Id.*  CO Moore stated that he and the other defendants gave plaintiff and Butler "loud verbal commands to stop fighting" but that neither complied.  Moore Aff. at ¶ 5 (docket no. 16-3).  Because neither inmate complied with these commands, defendants separated them.  *Id.*  CO Shepherd stated that when he arrived at the scene, plaintiff was on top of Inmate Butler and that both of them were "swinging their fists and exchanging punches while on the ground."  Shepherd Aff. at ¶ 5.  Shepherd and the other defendants gave plaintiff and Inmate Butler verbal orders to stop fighting,  but the inmates disregarded these commands.  *Id.*  CO Shepherd "[p]ulled plaintiff by his leg in an attempt to separate him from Inmate Butler."  *Id.*  While defendants were placing plaintiff in restraints, Inmate Butler was being escorted away, at which time Butler "turned toward [p]laintiff and kicked him in the face."  *Id.* at ¶ 7.

In his counter-affidavit, plaintiff stated that CO Shepherd grabbed him from behind and that he complied with Shepherd's order to get down and was "knock [sic] down to his knees."  Hendrix Aff. at ¶ 5.  When defendants ordered plaintiff to put his arms behind his back, plaintiff stated that his arm was "messed up" from an incident involving his right shoulder in 2008.  *Id.*

7

According to plaintiff, CO Shepherd knew plaintiff could not put his arm behind his back. *Id.* at ¶ 6. Defendants then dragged plaintiff across the concrete floor causing injuries to plaintiff's foot, knees and shoulders. *Id.* at ¶ 6. While being dragged, plaintiff yelled "you're hurting me." *Id.* at ¶¶ 6-7. Plaintiff supports his claim of foot, knee and shoulder injury by referring to "Exhibit C". *Id.* at ¶ 6. However, Exhibit "C" attached to the affidavit does not reflect the injuries. Rather, this exhibit consists of two prescriptions ordered two years after the incident: one for Amoxicillin-Pot Clavulanate prescribed on June 5, 2013; and Sulfamethoxazole-TMP for a sinus infection prescribed on July 2, 2013. *See* Exhibit C (docket no. 18-1 at p. 9). A different exhibit attached to plaintiff's affidavit reflects a visit to health care services on June 7, 2010 at 4:13 p.m., approximately 45 to 50 minutes after the altercation. *See* SOAP Note (docket no. 18-1 at p. 10). At this time, a medical provider examined plaintiff and treated him for abrasions to his right hand and knees with antibiotic ointment and band aids. *Id.*

Viewing the record in the light most favorable to the non-movant (plaintiff), the facts do not support a claim for excessive force against defendants Streit, Shepherd and Moore. Assuming plaintiff's version of the events is true, these defendants used only limited force to restore order between two inmates fighting. The *de minimis* force used by defendants to restore order, i.e., dragging a mutual combatant away from a fight, can hardly be referred to as "repugnant to the conscience of mankind" or "maliciously and sadistically for the very purpose of causing harm." *Hudson*, 503 U.S. at 9. Defendants' actions taken against plaintiff are more akin to the actions of high school staff members breaking up a schoolyard fight rather than an unconstitutional use of excessive force by prison guards.

Furthermore, while the existence of an excessive force claim is "based on the nature of the force rather than the extent of the injury," the Court may consider the extent of the injury in determining whether excessive force was used. *Wilkins v. Gaddy*, 559 U.S. 34, 34-39 (2010).

> The extent of injury suffered by an inmate is one factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation. The extent of injury may also provide some indication of the amount of force applied.

*Id.* at 37-38 (internal quotation marks, citations and brackets omitted). While "injury and force. . . . are only imperfectly correlated," a prison inmate "who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim." *Id.* at 38 (citations omitted). Here, plaintiff's only discernable injuries were abrasions treated with antibiotics and band aids. Such *de minimis* injuries are consistent with being dragged away from the fight with a minimal use of force. Plaintiff has failed to establish an excessive force claim. Accordingly, defendants Streit, Moore and Shepherd are entitled to summary judgment on the excessive force claims which are alleged in Claims I and II.

  **C.**  **Failure to protect**

In Claim III, plaintiff alleged that defendants Shepherd, Moore and Streit failed to protect plaintiff after he informed these defendants "on many occasions" that there needed to be someone on duty at the back entry to school building. Compl. at ¶ 41; Hendrix Aff. at ¶ 10. Neither plaintiff's allegations nor his affidavit set forth sufficient facts to establish a federal constitutional claim. An Eighth Amendment violation may occur when prison guards fail to protect one inmate from an attack by another inmate. *See Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990). However, "not all injuries suffered by an inmate at the hands of another prisoner result in

9

constitutional liability for prison officials under the Eighth Amendment." *Wilson v. Yaklich*, 148 F.3d 596, 600 (6th Cir. 1998). To establish an Eighth Amendment claim that a prison official failed to protect an inmate, the inmate must show that the official was deliberately indifferent "to a substantial risk of serious harm" to the inmate. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994); *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004). "To demonstrate deliberate indifference, an inmate must present evidence from which a trier of fact could conclude 'that the official was subjectively aware of the risk' and 'disregard[ed] that risk by failing to take reasonable measures to abate it.'" *Greene*, 361 F.3d at 294, *quoting Farmer*, 511 U.S. at 829, 847.

Plaintiff has not established that defendants Streit, Moore and Shepherd were subjectively aware of a substantial risk of serious harm to plaintiff as he left the school building on June 7, 2010, or that these defendants disregarded that risk. As an initial matter, plaintiff did not allege any specific facts which would show that he was in danger of being assaulted by inmate Butler. Such a claim does not rise to the level of an Eighth Amendment violation. *See Lewis v. McClennan*, 7 Fed. Appx. 373, 375 (6th Cir. 2001) (prisoner's allegation of a hypothetical risk of danger to his safety prior to the attack was insufficient to state deliberate indifference to establish a "failure to protect" claim under the Eighth Amendment).

In addition, to establish deliberate indifference, plaintiff must show that defendants were subjectively aware of a substantial risk of serious harm to plaintiff and disregarded the risk by failing to take reasonable measures to abate it. *See Farmer*, 511 U.S. at 847; *Greene*, 361 F.3d at 294. "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence. . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact

that the risk was obvious." *Farmer*, 511 U.S. at 842. "However, a prison official who was unaware of a substantial risk of harm to an inmate may not be held liable under the Eighth Amendment even if the risk was obvious and a reasonable prison official would have noticed it." *Bishop v. Hackel*, 636 F.3d 757, 767 (6th Cir. 2011), citing *Farmer*, 511 U.S. at 841-42. Here, there is no evidence that any of the defendants knew of an impending or potential assault on plaintiff by Inmate Butler. Defendants cannot be held liable for failing to protect plaintiff from an assault of which they were not aware. *Ross v. Parke*, No. 88–5365, 1988 WL 104933 at *1 (6th Cir. Oct.11, 1988) (plaintiff prisoner did not establish a failure to protect claim under the Eighth Amendment when the defendant prison officials did not know nor were they informed by plaintiff that another inmate was a potential assailant). Accordingly, defendants Streit, Moore and Shepherd are entitled to summary judgment on the failure to protect claim as alleged in Claim III.

### III. Recommendation

For the reasons set forth above, I respectfully recommend that the motion for summary judgment filed by defendants Andrew Streit, Reginald Moore and Demetrius Shepherd (docket no. 15) be **GRANTED** and that they be **DISMISSED** from this action.


Dated: 06/30/2014                                /s/ Hugh W. Brenneman, Jr.
                                                 Hugh W. Brenneman, Jr.
                                                 United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).